[No. E054040. Fourth Dist., Div. Two. Nov. 23, 2011.]

TIFFIN MOTORHOMES, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
CUMMINS, INC., Real Party in Interest.

COUNSEL

Gates, O'Doherty, Gonter & Guy, Matthew M. Proudfoot and Thomas A. Scutti for Petitioner.

No appearance for Respondent.

Wilson Turner Kosmo, Robert A. Shields and Christian S. Scott for Real Party in Interest.

OPINION

## CODRINGTON, Acting P. J.—

### INTRODUCTION

As our colleagues in Division Three of this court once remarked, "[i]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship. . . . Even lawyers find words like 'indemnity' and 'subrogation' ring of an obscure Martian dialect." (*Herrick Corp. v. Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 756 [34 Cal.Rptr.2d 844] (*Herrick*).) Fortunately for us, this case does not involve subrogation, but it otherwise includes the above mentioned elements of perplexity and confusion.

In this case, we are asked to determine whether the manufacturer of a vehicle engine that is sued on warranty grounds may rely on Code of Civil Procedure section 877.6[1] to escape any noncontractual obligation to indemnify a codefendant. We conclude that the statute does not apply in this situation and that the trial court therefore erred in granting real party in interest's motion for approval of a good faith settlement.[2]

### BRIEF STATEMENT OF FACTS

The underlying action was brought by plaintiffs Thomas and Debra Pigott against several defendants, alleging that a motor home or recreational vehicle purchased by plaintiffs suffered from various and rather vaguely

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Due to our conclusion, it is unnecessary to address the argument that the settlement did not, as a matter of fact and law, qualify as a "good faith settlement" within the meaning of the statute. And see also the discussion *post* on the timeliness of the petition.

described defects that were never satisfactorily repaired. Real party in interest Cummins, Inc. (Cummins), manufactured the engine of the vehicle; petitioner Tiffin Motorhomes, Inc. (Tiffin), manufactured the coach (the part of the vehicle intended for "human occupation"); and defendant Freightliner Custom Chassis Corporation (Freightliner) manufactured the chassis.

Cummins filed a motion for order determining good faith settlement under section 877.6 in which it represented that it had settled with plaintiffs for $19,500. In a declaration, Attorney Christian Scott explained that Cummins had been asked to service the engine on four occasions. First, it repaired an oil leak. Next, it replaced the engine. It then performed service related to a fuel line. Finally, a gasket was replaced to fix an oil leak. Cummins also pointed out that although the complaint appeared to focus on "engine overheating" as perhaps the primary issue making the vehicle undrivable, plaintiffs had never made a warranty claim or returned the vehicle to Cummins for service for this issue.[3]

Petitioner Tiffin, joined by codefendants La Mesa R.V. Center, Inc., HWH Corporation, Inc., and Gemb Lending, Inc.,[4] opposed the motion on two grounds.[5] First, they argued that the settlement payment was inadequate in relation to Cummins's possible liability (not "in the ballpark"). Second, they argued that section 877.6 did not apply at all in this situation.

Petitioner pointed out that plaintiffs were seeking a base sum of over $622,000 (representing the over time, financed, price of the vehicle) plus unspecified other damages, civil penalties, and attorney fees, costs and expenses.[6]

The trial court agreed with Cummins and granted the motion. The effect of the ruling, of course, was to insulate Cummins from any potential obligations to its codefendants in the nature of contribution or equitable indemnity based on comparative negligence or comparative fault. (§ 877.6, subd. (c); *Fullerton Redevelopment Agency v. Southern California Gas Co.* (2010) 183

---

[3] The complaint also alleges problems relating to "the entry step, comp doors [*sic*], entry door, electrical system, slideouts, jacks" and "malfunctions that related to water leaks and windows."

[4] The latter three parties did not join in Tiffin's petition to this court.

[5] La Mesa R.V. Center, Inc., sold the vehicle to plaintiffs. The other defendants were involved either in the manufacturing or financing of the vehicle.

[6] The action was brought under the Song-Beverly Consumer Warranty Act. (Civ. Code, § 1790 et seq.) The act allows a successful plaintiff to recover attorney fees, costs, and expenses and a civil penalty of up to twice actual damages. (Civ. Code, § 1794, subds. (d), (e)(1).) However, the penalty will only be available if the seller is found to have violated section 1793.2, subdivision (d)(2), which requires a seller who cannot repair a motor vehicle after a reasonable number of attempts either to replace it or make full restitution.

Cal.App.4th 428, 432 [107 Cal.Rptr.3d 396].) Petitioner seeks review by way of a petition for writ of mandate, as expressly authorized by subdivision (e) of section 877.6.

## DISCUSSION

■ Section 877.6, subdivision (a)(1), allows a motion to be made by "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt." Subdivision (c) simply refers to "any other joint tortfeasor or co-obligor." Section 877, which sets out the *substantive* rule as to which section 877.6 prescribes the procedure, employs the terms "one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights."[7] Despite the slight differences in language, these terms are to be construed in a like manner. (*Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1337 [46 Cal.Rptr.2d 516] (*Topa*).) To do so, it is obviously necessary to focus on the most restrictive phrase, which would be "co-obligor on a contract debt." The crucial word is "a"—the parties must be co-obligors on "a" single contract. In other words, they must share the *same* contractual obligation. ■ It is, of course, axiomatic that where language in a statute is clear, courts have nothing to interpret or construe. (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 507–508 [99 Cal.Rptr.3d 284]; see also *American Nat. Ins. Co. v. Low* (2000) 84 Cal.App.4th 914, 924 [101 Cal.Rptr.2d 288].) ■ Hence, the plain meaning of the statute is that its benefits apply to codefendants who are liable on the *same* contract. In our case, Tiffin and Cummins are being sued on the *separate* warranties either issued by them or imposed by law upon them, and in either case attaching to the component parts for which each is separately responsible.

The cases construing this language in section 877.6 appear to arise primarily, if not solely, in the insurance context, where a plaintiff seeks to recover for the same loss from two different insurance policies. Consistent with our view, it has been held in these cases that section 877.6 does not apply to insulate a settling insurer from the contribution claims of a coinsurer. As the court noted in *Herrick, supra,* 29 Cal.App.4th at pages 759–760, "[n]othing in the good faith settlement statutes suggests they apply to litigants other than 'joint tortfeasors' . . . or 'co-obligors on a contract debt.' " *Herrick*

---

[7] This language is not accurate if it reflects a belief that the tortfeasors who may be liable in equitable indemnity to other tortfeasors must all commit the same tort. All that is required for an indemnity claim (and immunity after a good faith settlement) is that the defendants be liable for the same *damages*. It is unity of damages, not tortious actions, that leads to equitable indemnification rights and obligations. (See *May v. Miller* (1991) 228 Cal.App.3d 404, 409 [278 Cal.Rptr. 341].)

involved the insurers of two insureds that were themselves "joint tortfeasors," but the decision nevertheless holds that section 877.6 could not be applied to relieve one insurer from a contribution claim made by a coinsurer that had paid for the insured's losses. Although both insurers had an obligation to a single insured, the court stressed that "the respective obligations arise strictly out of separate contracts—hence they are not co-obligors on 'a' contract debt (singular)." (*Herrick*, at p. 761.) Other cases are to the same effect in the insurance context. (See, e.g., *Rohr Industries, Inc. v. First State Ins. Co.* (1997) 59 Cal.App.4th 1480 [69 Cal.Rptr.2d 872] (*Rohr*); *Topa, supra,* 39 Cal.App.4th 1331.)

■ We therefore believe that the plain language of the statute leads to, and even requires, the conclusion that manufacturers of separate component parts that are liable to a plaintiff (if at all) only on the theory of breach of an express or implied warranty attached to those parts are *not* "co-obligors on a contract debt." (§ 877.6, subd. (a)(1).) However, we will proceed to address the points and policy issues proffered by real party in interest.

Real party in interest first argues that the petition by Tiffin is untimely under subdivision (e) of section 877.6, which provides that "[w]hen a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. *The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow.*" (Italics added.) In this case, as Cummins points out, a *minute order* reflecting that its motion was granted was mailed by the court clerk on June 1, 2011, although a formal order (prepared by Cummins) was not served until at least June 29. This petition was filed by Tiffin on July 19.

■ First, we do not agree with Tiffin that we have unlimited discretion to consider the petition even if it is legally untimely. Similar language in the summary judgment statute, section 437c, subdivision (m)(1),[8] has been held to be jurisdictional. (*Eldridge v. Superior Court* (1989) 208 Cal.App.3d 1350, 1353 [256 Cal.Rptr. 724], and cases cited.) In that case, the reason is to prevent tardy petitions from delaying proceedings. (*Ibid.*) That the same principle infuses sections 877 and 877.6 is shown by the legislative establishment of time limits within which the reviewing court must act. (§ 877.6, subd. (e).)[9] We also believe that the time limits applicable to the aggrieved

---

[8] Section 437c, subdivision (m)(1), currently provides that a petition for writ of mandate must be filed "within 20 days after service upon him or her of a written notice of entry of the order."

[9] Section 877.6, subdivision (e)(2), also requires the matter to be given precedence in calendaring.

party are triggered by the court clerk's notice of the minute order. Unlike statutes of similar effect, the specific language of section 877.6 does not require either a copy of the actual ruling or notice that it has been entered. (Cf., e.g., § 437c, subd. (m); see discussion and cases cited in *Eldridge*.)

However, we also believe that the time limit does not apply in this case because Tiffin is not—in this portion of its argument—challenging the determination that Cummins's settlement was in good faith. Rather, it is challenging the trial court's authority to apply the statute at all. In *Bob Parrett Construction, Inc. v. Superior Court* (2006) 140 Cal.App.4th 1180 [45 Cal.Rptr.3d 250] (*Parrett*), the court applied this reasoning to a case in which the trial court refused to consider a motion under section 877.6 in the belief that it did not apply in the circumstances presented. (140 Cal.App.4th at p. 1188.) We recognize that in our case, the court *did* rule and there *is* a "determination" of good faith so that the above case is not, strictly speaking, controlling. However, as Tiffin's essential challenge is the same as that in *Parrett* and does not involve the merits of the "good faith" determination, we believe that the same rule should apply.

■ We next address Cummins's argument[10] that it and Tiffin are "alleged to be" joint tortfeasors. No, they are not.[11] Plaintiffs allege that Cummins and Tiffin breached the warranties; there is no claim for tort damages. A tort is " 'any wrong, *not consisting in mere breach of contract*, for which the law undertakes to give to the injured party some appropriate remedy against the wrongdoer.' " (*Denning v. State* (1899) 123 Cal. 316, 323 [55 P. 1000], italics added.) The cases cited by Cummins do not support its apparent argument that any "wrong" constitutes a "tort." In *Mid-Century Ins. Exchange v. Daimler-Chrysler Corp.* (2001) 93 Cal.App.4th 310 [112 Cal.Rptr.2d 880], the appellate court simply describes the various defendants as "joint tortfeasors." The action involved an exploding car battery with resulting personal injury to the plaintiff, and the court noted that absent settlement, the plaintiff "would have named [the vehicle owner] as defendant on a *negligence claim against him*." (*Id.* at p. 316, italics added.)[12] The case simply holds that it need not have been established that the settling party *did* commit a tort, or

---

[10] Cummins spends a substantial amount of time arguing the point set out in footnote 7. We agree, but the point is not significant.

[11] It appears doubtful that a cause of action could be stated in tort against defendants, as a claim based on negligence or even strict liability will not lie where the wrong has resulted only in economic loss rather than actual damage to person or property. (See *Aas v. Superior Court* (2000) 24 Cal.4th 627, 635–636 [101 Cal.Rptr.2d 718, 12 P.3d 1125], superseded by statute as stated in *Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1210–1211 [86 Cal.Rptr.3d 196] [noting that with respect to residential construction, the rule of *Aas* has been abrogated by Civ. Code, § 895 et seq. (Right to Repair Act)].)

[12] The opinion goes on to describe the owner's conduct in relation to the accident and reflects the trial court's finding of potential tort liability.

even that the settling party have been named as a defendant; section 877.6 applies if the settler is a potential "joint tortfeasor." (*Mid-Century*, at p. 316.) But in this case, there is no tort claim and no tort damages. Tiffin and Cummins owed separate duties to plaintiffs and the remedies for the breaches would be separately calculable. It is apparent that damages owed by Cummins due to an arguably defective engine would be distinct from those caused by defects to the coach attributable to Tiffin. Had the Legislature intended section 877.6 to apply to *any* multiple wrongdoers, it could have said so. It did not.

■ Similarly, Cummins's insistence that "the complaint and cross-complaint allege that Tiffin and Cummins are joint tortfeasors, co-obligors, or both" is either incorrect, irrelevant, or both. The complaint, as we have described, sounds solely in warranty. Cummins points out that Tiffin has filed a cross-complaint seeking equitable indemnity, and correctly notes that such indemnity is normally available to spread the risk among joint *tortfeasors*. (See generally *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 591–598, 604–607 [146 Cal.Rptr. 182, 578 P.2d 899], superseded by statute as stated in *Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 82 [11 Cal.Rptr.2d 454].) But Tiffin's filing of the cross-complaint does not concede that the doctrine will apply here; it is more properly construed as attorney caution and the desire to cover all bases in the event of what Tiffin would consider judicial error.[13] We note that the principle of judicial estoppel does not apply to a party who merely *advocates* inconsistent positions, but only to one who *successfully* asserts one position and later attempts to benefit from asserting an inconsistent position. (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 735 [135 Cal.Rptr.2d 415].) Cummins's attempt to rely on boilerplate allegations in the complaint also fails despite the rule stated above to the effect that the allegations control. Cummins points out that plaintiffs allege that all of the defendants are the "agents, servants, and employees" of each other, and that they acted with "permission, consent, knowledge, and ratification" of the codefendants. The cases discussed above only say that where there are allegations of a tort, and reliance on a theory in tort, sections 877 and 877.6 apply whether or not a settling party is factually liable in tort; they do not say that the applicability of the statutes can be determined by routine allegations in an action *not* sounding in tort. Plaintiffs allege that they purchased the vehicle "from" all of the manufacturing defendants "through" defendant La Mesa R.V., "an authorized dealer"; however, this does not create "co-obligor status" because plaintiffs also allege that Cummins (as "Engine Manufacturer"), Tiffin (as "Coach Manufacturer") and

---

[13] If Tiffin were the settling party, we would have no difficulty in holding that its decision to file a cross-complaint assuming the application of negligence and joint tortfeasor principles did not compel the application of section 877.6, where plaintiffs' claim clearly fell outside the statute.

Freightliner (as "Chassis Manufacturer") *each* "appended to the Subject Vehicle an express written 'new car' warranty."[14] Thus, there is no claim of co-obligation.

Finally, Cummins argues that policy consideration and legislative intent mandate the availability of section 877.6 in order to encourage settlement. This argument has been raised repeatedly and fallen upon deaf judicial ears. "We do not reach this argument because, under the law, we cannot: regardless of its merits in the abstract, the argument does not afford a basis for *construing* the language of Code of Civil Procedure sections 877 and 877.6 as [the insurer] proposes, and we cannot *rewrite* the language. If insurers are to have the relief [the insurer] seeks by way of statute, then [the insurer]'s argument must be urged to the Legislature rather than to the courts." (*Topa, supra,* 39 Cal.App.4th at p. 1344; accord, *Rohr, supra,* 59 Cal.App.4th at p. 1490.)

■ As we have explained *ante,* the clear language of the statute indicates that the Legislature has *not* extended the umbrella of section 877.6 to obligors on separate contracts or other contractual obligations despite the fact that all obligors are obliged to the plaintiffs. Nor is this in any way unreasonable, despite Cummins's claim that it will discourage the parties from settling in a case like this. Where defendants are not obligors on the same contract, their obligations to the plaintiffs may differ; they will not necessarily (and in fact will rarely) have caused the same harm to the plaintiffs. Each will, however, be liable for the contract damages stemming from the breach of the contract into which that defendant entered. These obligations are neither "joint" nor "joint and several" and, therefore, do not give rise to any right of contribution (Civ. Code, § 1432) because no defendant can be ordered to pay more than the amount of damages attributable to its own breach.

## DISPOSITION

■ Accordingly, we find that the trial court erred. The plain language of section 877.6 excludes the defendants in this case from its benefits because they are not co-obligors on "a" contract, and nothing in Cummins's arguments persuades us to depart from the general rule of construction, which requires us to respect plain language.

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to

---

[14] Because plaintiffs clearly allege separate warranties, we need not consider whether a plaintiff's allegation of co-obligation, however factually unsupported and commercially improbable, would compel the application of sections 877 and 877.6.

vacate its order approving Cummins's settlement as being in "good faith" within the meaning of section 877.6 and to enter a new order denying the motion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner to recover its costs.

Hollenhorst, J., and Richli, J., concurred.