Filed 9/10/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| RSL FUNDING, LLC, | E060421 |
| Plaintiff and Respondent, | (Super.Ct.No. RIC1308571) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| FELICIA ALFORD, | |
| Defendant and Respondent; | [NO CHANGE IN JUDGMENT] |
| STATE FARM FIRE AND CASUALTY COMPANY et al., | |
| Objectors and Appellants. | |

THE COURT

The petition for rehearing filed on September 1, 2015, is denied. The opinion filed in this matter on August 18, 2015, is modified as follows:

On page 3, the first full paragraph should read: On July 12, 2013, Alford entered into a second contract with RSL in which Alford agreed to assign to RSL $25,000 of the $100,000 payment due on August 11, 2016, and $25,000 of the payment of $151,558.80

1

due on August 11, 2021, in exchange for a current payment of $22,500. RSL assigned its rights to receive the periodic payments to EHL. RSL filed a petition for approval of the transfer. State Farm filed an opposition to the petition, asserting, among other grounds, that (1) the proposed transfer would violate a California statute (Ins. Code, § 10139.5, subd. (e)(3)),[1] which provides that an annuity issuer and settlement obligor may not be required to divide payments; and (2) the proposed transfer would materially increase State Farm's burdens and risks.

On page 4, the second full paragraph beginning "State Farm contends . . . ," should read: State Farm initially contended that the trial court's order requires it to split the $100,000 lump sum payment due on August 11, 2016, three ways, among (1) RSL ($25,000), (2) EHL, RSL's assignee in the 2012 transfer ($50,000), and (3) Alford ($25,000). At oral argument, State Farm's counsel conceded that because RSL had assigned both the 2012 and 2013 payments to EHL, it was required to make only two payments, not three.

On page 5, the third, fourth and fifth sentences in the first paragraph should read: "'One of the strongest indications of what construction should be given a statutory provision may be found in the use of negative, prohibitory, or exclusionary words. Where statutory restrictions are couched in negative terms they are usually held to be mandatory. In the language of one court "there is but one way to obey the command 'thou shalt not,' and that is to refrain altogether from doing the forbidden act."'"

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

(2A Sutherland, [Statutory Construction (4th ed. 1972)] § 57.09, p. 661, fns. omitted.)"
(*People v. Harner* (1989) 213 Cal.App.3d 1400, 1418 (dis. opn. of Kline, J.).)

On page 8, in the first paragraph, the sentence beginning, "RSL and State Farm agreed to an order similar . . . ," should read:  State Farm stated it would agree to an order in the form of the 2012 order, but RSL did not submit that proposed order to the trial court.

These modifications do not change the judgment.

CERTIFIED FOR PUBLICATION


McKINSTER
Acting P. J.

We concur:


KING
J.


CODRINGTON
J.

Filed 8/18/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| RSL FUNDING, LLC, | |
| Plaintiff and Respondent, | E060421 |
| v. | (Super.Ct.No. RIC1308571) |
| FELICIA ALFORD, | OPINION |
| Defendant and Respondent; | |
| STATE FARM FIRE AND CASUALTY COMPANY et al., | |
| Objectors and Appellants. | |

APPEAL from the Superior Court of Riverside County. Dallas Holmes, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed.

Drinker Biddle & Reath, Ryan S. Fife, Alexis N. Burgess and Stephen R. Harris for Objectors and Appellants.

Law Offices of Amir M. Kahana, Amir M. Kahana; The Feldman Law Firm and E. John Gorman for Plaintiff and Respondent.

No appearance for Defendant and Respondent Felicia Alford, in pro. per.

INTRODUCTION

Objectors and appellants State Farm Fire and Casualty Company (State Farm Fire) and State Farm Life Insurance Company (State Farm Life) (collectively, State Farm) appeal from the trial court's approval of an order directing the transfer of structured settlement payments to plaintiff and respondent RSL Funding, LLC (RSL).

FACTS AND PROCEDURAL BACKGROUND

In 1994, defendant Felicia Alford, then a minor, by her guardians, settled a personal injury claim against certain insureds of defendant State Farm Fire. The settlement was approved by a court order that provided, "for the best interest of the minor . . . the proceeds of such settlement be paid and used in the manner hereinafter specifically provided." Under the settlement, the payor, State Farm Life, was to deliver an annuity providing for guaranteed payments, as follows: (1) $10,000 annually from August 11, 2003, through August 11, 2006; (2) $50,000 on August 11, 2009; (3) $100,000 on August 11, 2016; and (4) $151,558.80 on August 11, 2021. State Farm Fire purchased an annuity contract from State Farm Life, which provides for the periodic payments to be made.

In July 2012, Alford entered into a contract with RSL under which she received $30,000 in exchange for a $50,000 portion of the payment due on August 11, 2016. RSL assigned its payment to Extended Holdings, Ltd. (EHL). The trial court approved the

transfer, and State Farm did not contest the transfer. Thus, under the 2012 order, State Farm was required to deliver a $50,000 portion of the August 11, 2016, payment to EHL.

On July 12, 2013, Alford entered into a second contract with RSL in which Alford agreed to assign to RSL $25,000 of the $100,000 payment due on August 11, 2016, and $25,000 of the payment of $151,558.80 due on August 11, 2021, in exchange for a current payment of $22,500. RSL filed a petition for approval of the transfer. State Farm filed an opposition to the petition, asserting, among other grounds, that (1) the proposed transfer would violate a California statute (Ins. Code, § 10139.5, subd. (e)(3)),[2] which provides that an annuity issuer and settlement obligor may not be required to divide payments; and (2) the proposed transfer would materially increase State Farm's burdens and risks.

The trial court approved the transfer petition, and State Farm has appealed.

### DISCUSSION

#### Standard of Review

We review a trial court's interpretation of a statute under a de novo standard of review. (*Gogri v. Jack in the Box*, *Inc.* (2008) 166 Cal.App.4th 255, 264.)

#### The Structured Settlement Protection Act

The California Legislature has adopted the Structured Settlement Protection Act (SSPA) (§ 10134 et seq.) to protect structured settlement payees from exploitation by factoring companies. Annuity issuers and structured settlement obligors are defined as

---

[2] All further statutory references are to the Insurance Code unless otherwise indicated.

3

"interested parties" under the SSPA (§ 10134, subd. (g)), and as such, are entitled to notice of petitions to authorize transfer of payments under a structured settlement agreement. (§§ 10139, subd. (a), 10139.5, subd. (f)(2).)

A transfer to a factoring company must be approved by the court and requires an express finding that the proposed transfer "will not contravene other applicable law." (§ 10137, subd. (b).) The SSPA specifically provides, "Neither the annuity issuer nor the structured settlement obligor may be required to divide any structured settlement payment between the payee and any transferee or assignee or between two or more transferees or assignees." (§ 10139.3, subd. (e).)

State Farm contends that the trial court's order requires it to split the $100,000 lump sum payment due on August 11, 2016, three ways, among (1) RSL ($25,000), (2) EHL, RSL's assignee in the 2012 transfer ($50,000), and (3) Alford ($25,000), and to split the August 11, 2021, payment two ways between (1) RSL ($25,000) and (2) Alford ($126,558.80). State Farm asserts the order therefore violates section 10139.3, subdivision (e).

Despite conceding in the trial court that "an issuer cannot be forced to split or divide payments," RSL now argues that section 10139.3, subdivision (e), is merely permissive, not mandatory, because the statute uses the word "'may'" instead of "'shall.'" RSL contends the trial court properly exercised its discretion to permit payment splitting.

4

We agree that settled principles of statutory construction direct that "we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms." (*Tarrant Bell Prop.*, *LLC v. Superior Court* (2011) 51 Cal.4th 538, 542.) However, RSL fails to recognize that a contrary principle of statutory construction governs when the statute, such as section 10139, subdivision (e), uses a negative form of the word "may." "'One of the strongest indications of what construction should be given a statutory provision may be found in the use of negative, prohibitory, or exclusionary words. Where statutory restrictions are couched in negative terms they are usually held to be mandatory. In the language of one court "there is but one way to obey the command 'thou shalt not,' and that is to refrain altogether from doing the forbidden act."' [Citation.]" (*People v. Harner* (1989) 213 Cal.App.3d 1400, 1418.) As a court in another state has pointed out, if a legislature intends the phrase to be permissive, it can simply omit the word "'not.'" (*State v. Gettman* (1989) 56 Wash.App. 51, 54.) Here, the statute's use of the words "neither" and "nor" combined with "may be required" clearly indicates the Legislature's intention to impose a mandatory rule.

Moreover, while the parties have cited no published California case law expressly applying section 10139.3, subdivision (e), and our own research has revealed none, courts in other states have construed similar language in their own statutes to be mandatory. For example, in *J.G. Wentworth Originations*, *LLC v. Freelon* (Tex.Ct.App. 2014) 446 S.W.3d 426, at page 428, footnote 4, the court observed that under language of Texas's version of the SSPA (identical to that of subdivision (e)), a settlement obligor "would not

5

agree, and it could not be compelled under the SSPA, to divide the annuity payments" between the annuitant and her transferee. (See also *In re A Transfer of Structured Settlement Payment Rights by Laurel J. Shanks* (Tenn.Ct.App. May 27, 2014, No. E2013-01702-COA-R3-CV) 2014 Tenn.App. Lexis 301, at pages *26-*27 [stating that it would violate a similar provision under Tenn. law to require an annuity issuer or structured settlement obligor to divide payments].)

"Where, as here, there is no California case directly on point, foreign decisions involving similar statutes and similar factual situations are of great value to the California courts." (*Martinez v. Enterprise Rent-A-Car Co.* (2004) 119 Cal.App.4th 46, 55.) Although such authorities are persuasive rather than mandatory precedent, we agree with their reasoning and conclusions. We therefore conclude that the trial court erred in entering an order that requires State Farm to divide payments because the SSPA provides that an annuity issuer may not be required to do so. (§ 10139.3, subd. (e).)

Waiver, Forfeiture, Judicial Estoppel

RSL contends that State Farm has waived or forfeited or is judicially estopped from asserting its statutory right to avoid splitting payments because it waived any objections to dividing payment in the 2012 transfer order and agreed in its 2013 proposed order to divide payments. State Farm responds that it expressly preserved its ability to object to payment splitting in 2012 and timely objected to the 2013 transfer.

*Effect of 2012 Order*

Waiver is the "intentional relinquishment of a known right." (*Applera Corp. v. MP Biomeds, LLC* (2009) 173 Cal.App.4th 769, 791.) RSL argues that by agreeing to split payments in the 2012 order, State Farm intentionally relinquished its right to assert the anti-splitting statute. However, the 2012 order expressly stated that State Farm's "lack of opposition to this matter, or stipulation hereto or compliance herewith, shall not constitute evidence in any other matter, and is not intended to constitute evidence in any other matter that: [¶] . . . . [¶] c. Annuity Owner [State Farm Fire] and Annuity Issuer [State Farm Life] have waived any right in connection with any other litigation or claims." The 2012 order thus makes it clear that State Farm did not intentionally relinquish its rights under section 10139.3, subdivision (e), with respect to future transactions.

RSL nonetheless argues that by failing to object to the 2012 order, State Farm put an end to the anti-assignment condition. To support that position, RSL cites *German-American Sav. Bank v. Gollmer* (1909) 155 Cal. 683. That case stated the principle that a condition against waiver of assignment of a leasehold estate is permanently discharged by consent or waiver. (*Id.* at p. 688.) That principle is inapposite in the present context.

*The Proposed 2013 Order*

RSL argues that State Farm submitted a proposed 2013 order in the same form as the 2012 order (which provided for splitting the Aug. 11, 2016, payment between Alford and EHL) and consented to splitting payments.

State Farm filed a written opposition to the proposed transfer and appeared at hearings on the proposed transfer where it asserted its opposition to payment splitting. At the close of the September 24, 2013, hearing, the trial court stated it would approve the transfer and instructed the parties to work out the form of the order. RSL and State Farm agreed to an order similar to the 2012 order, but RSL did not submit that proposed order to the trial court. State Farm therefore filed an objection to the proposed order, stating that State Farm had not withdrawn its objection to the proposed order, that State Farm disagreed with the trial court's ruling, and that RSL had misrepresented State Farm's position by submitting a proposed order that differed from the proposed order to which State Farm had agreed.

It is clear from the record that State Farm never withdrew its objections to the proposed 2013 transfer and never consented to split payments in connection with the 2013 transfer.

### Judicial Estoppel

RSL argues that State Farm is judicially estopped by its prior conduct from challenging the order requiring it to divide payments.

"'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) Judicial estoppel applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true);

8

(4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Id*. at p. 183.) Judicial estoppel does not apply when a party merely advocates inconsistent provisions; rather, it applies when a party successfully asserts one position and later attempts to benefit from asserting an inconsistent position. (*Tiffin Motorhomes, Inc. v. Superior Court* (2011) 202 Cal.App.4th 24, 32.)

Here, the 2012 transfer was a separate and distinct transaction as to which State Farm elected to raise no objection while explicitly reserving its right to do so in the future. Thus, State Farm's positions in the two transactions are not "totally inconsistent." The doctrine of judicial estoppel does not apply.

Reversal of Order

We have concluded that the trial court's order violated section 10139.5, subdivision (e), and State Farm has not forfeited its right to oppose that order. Reversal is therefore required. RSL has requested this court to vacate that order and remand the case with instructions to the trial court to order a servicing arrangement under which State Farm would send the entirety of the 2016 and 2021 payments to EHL, with EHL to retain the transferred portions and remit the balance to Alford. We decline to do so. State Farm aptly points out that such an order would put it in the position of having to rely on another entity to fulfill its contractual obligations to Alford and would expose State Farm to litigation if, for example, RSL or its assignee sought bankruptcy protection.

DISPOSITION

The order appealed from is reversed.  Appellants are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION

McKINSTER_____

Acting P. J.

We concur:


KING_____

          J.


CODRINGTON_____

          J.